```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

KEY ITEMS, INC.,                       :

                    Plaintiff,         :     09 Civ. 3729 (HBP)

     -against-                         :     OPINION
                                             AND ORDER
ULTIMA DIAMONDS, INC., GLOBAL          :
JEWELLERY SOLUTIONS LTD., ULTIMA
2008 LTD. and EDWARD MAIEROVITZ,       :

                    Defendants.        :

----------------------------------X
```

       PITMAN, United States Magistrate Judge:

I.  Introduction

       By notice of motion dated August 11, 2009 (Docket Item 14), defendants Ultima 2008 Ltd. and Global Jewellery Solutions Ltd. ("Global Defendants") move to dismiss plaintiff Key Items, Inc.'s, ("Key Items'"), claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In addition to opposing the Global Defendants' motion, Key Items seeks leave to amend its complaint.  This action was referred to me for all purposes with the consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  For the reasons set forth below, the Global Defendants' motion to dismiss is granted, and Key Items' application for leave to serve an amended complaint is denied without prejudice.

II.  Facts

      This action arises out of defendants' alleged failure to pay for two shipments of jewelry that Ultima Diamonds, Inc., ("Ultima Diamonds"), ordered from Key Items.  Key Items alleges that defendants are responsible for the price of this jewelry based on theories of breach of contract and account stated.

      On or about September 12, 2008, Ultima Diamonds ordered 1,800 rings and 1,500 earrings from Key Items.  The rings were to be delivered on approximately October 15, 2008 and the earrings were to be delivered on approximately November 15, 2008 (Complaint, dated Apr. 13, 2009 (Docket Item 1), ("Compl."), ¶ 10). Key Items confirmed this order in an e-mail dated September 12, 2008 which states, under the heading "Recap of conversation with Rob," the method of pricing the jewelry, product specifications and the dates on which each order would be due (Compl. Ex. A).

      Key items delivered the rings to Ultima Diamonds on approximately October 15, 2008 (Compl. ¶ 12 and Ex. B).  On or around October 23, 2008, Maierovitz, who, according to the complaint, "singularly control[s] and dominate[s]" the corporate defendants, notified Key Items that he might not need the shipment of earrings (Compl. ¶¶ 6, 13).  Key Items informed Maierovitz that it had already prepared a "significant" portion of this order for delivery, but that it would cancel

approximately 700 pairs of earrings.  Maierovitz agreed to accept the remainder of the shipment (Compl. ¶¶ 13-14).

Key Items shipped the remaining 803 pairs of earrings to Ultima Diamonds on approximately December 3, 2008 (Compl. ¶ 15 and Ex. C).  Maierovitz then informed Key Items that he would not accept the shipment (Compl. ¶ 16).  Key Items and the Global Defendants arranged for the return of the earrings (Compl. ¶ 17). Then on approximately February 9, 2009, Maierovitz returned 100 of the rings that had been delivered in October 2008 (Compl. ¶ 18) and on approximately March 3, 2009, Maierovitz notified Key Items via e-mail that Ultima Diamonds and the Global Defendants wanted to return still more of the rings delivered in October 2008 (Compl. ¶ 19).  Key Items responded that it would accept a return of up to 30 percent of the account balance in rings if Maierovitz paid the remaining 70 percent of the account balance (Compl. ¶ 19).  On March 17, 2009, Key Items sent Ultima Diamonds a statement reflecting a $112,917.96 account balance (Compl. ¶ 21 and Ex. D).  Although Key Items has repeatedly requested payment, none of the defendants has paid this balance (Compl. ¶ 22).

Key Items alleges that Ultima Diamonds and the Global Defendants "exist[] at the pleasure of Maierovitz, and . . . are run in a fashion that cannot be distinguished from the management of Maierovitz's personal affairs" (Compl. ¶ 6).  Key Items also alleges that Ultima Diamonds and the Global Defendants are all

Ontario corporations, share the same address, and were involved in the transaction that is the subject of the complaint (Compl. ¶ 6).

Based on the foregoing allegations, Key Items alleges that defendants are responsible for the price of the jewelry retained by Ultima Diamonds under theories of breach of contract and account stated.  The Global Defendants contend that Key Items' claims against them should be dismissed because the complaint does not allege that Key Items entered into a contract with the Global Defendants or presented an account to the Global Defendants.  In its opposition to the motion, Key Items seeks leave to amend in the event that the Global Defendants' motion to dismiss is granted.

III.  Analysis

    A. Standards Applicable to
       a Motion to Dismiss

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader.  See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)(referring to "well-pleaded

allegations"); <u>Mills v. Polar Molecular Corp</u>., 12 F.3d
1170, 1174 (2d Cir. 1993).  "'[T]he complaint is deemed
to include any written instrument attached to it as an
exhibit or any statement or documents incorporated in
it by reference.'"  <u>Int'l Audiotext Network, Inc. v.
Am. Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995)(quoting
<u>Cortec Indus., Inc. v. Sum Holdings L.P.</u>, 949 F.2d 42,
47 (2d Cir. 1991)).  The Court also may consider
"matters of which judicial notice may be taken."
<u>Leonard T. v. Israel Discount Bank of New York</u>, 199
F.3d 99, 107 (2d Cir. 1999) (citing <u>Allen v. WestPoint-
Pepperill, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991)).  In
order to avoid dismissal, a plaintiff must do more than
plead mere "[c]onclusory allegations or legal
conclusions masquerading as factual conclusions."
<u>Gebhardt v. Allspect, Inc.</u>, 96 F.Supp.2d 331, 333
(S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's
Federal Practice ¶ 12.34[a][b] (3d ed. 1997)).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3

(S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); <u>see also</u> <u>In re Elevator</u>

<u>Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007); <u>Johnson &</u>

<u>Johnson v. Guidant Corp.</u>, 525 F. Supp. 2d 336, 345 (S.D.N.Y.

2007) (Lynch, D.J.).

      The Supreme Court has clarified the proper mode of

inquiry to evaluate a motion to dismiss pursuant to Rule

12(b)(6), which uses as its starting point the principle that

"[a] pleading that states a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed.R.Civ.P. 8(a).

      [I]n <u>Bell Atl[antic] Corp. v. Twombly</u>, 550 U.S.
544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court
disavowed the well-known statement in <u>Conley v. Gibson</u>,
355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)
that "a complaint should not be dismissed for failure
to state a claim unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of

> his claim which would entitle him to relief." 550 U.S.
> at 562.  Instead, to survive a motion to dismiss under
> Twombly, a plaintiff must allege "only enough facts to
> state a claim to relief that is plausible on its face."
> Id. at 570.

Talley v. Brentwood Union Free Sch. Dist., Civ. 08-790, 2009 WL

1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the
> speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful
> in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)

(citations, internal quotations and alterations omitted).

Allegations state a facially plausible claim when their

factual content "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct

alleged.  The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully."  Ashcroft v. Iqbal, supra, 129

S.Ct. at 1949 (citations omitted).  "Where a complaint pleads

facts that are merely consistent with a defendant's liability, it

stops short of the line between possibility and plausibility of

entitlement to relief."  Ashcroft v. Iqbal, supra, 129 S.Ct. at

1949 (internal quotations omitted).  Accordingly, "where the

well-pleaded facts do not permit the court to infer more than the

6

mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950, quoting Fed.R.Civ.P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, supra, 129 S.Ct. at 1950.

Both parties have submitted affidavits and exhibits in connection with the Global Defendants' motion.  Key Items contends that it relied on many of the exhibits submitted in bringing the instant action and that these documents should, therefore, be considered in resolving defendants' motion to dismiss (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Complaint of Global Jewellery Solutions Ltd. and Ultima 2008 Ltd., dated August 31, 2009 (Docket Item 18), ("Pl's Opp."), at 2; Affidavit of Kathryn L. Bedke, sworn to Aug. 31, 2009 (Docket Item 17), ("Bedke Aff."), at ¶¶ 7-15).  The Global Defendants contend that the documents submitted by Key Items

should not be considered in deciding their motion (Reply
Memorandum of Law in Further Support of Defendant Ultima 2008,
Ltd.'s Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6), dated Sept.
10, 2009 (Docket Item 16), ("Defs' Reply"), at 1).

As noted above a "complaint is deemed to include any
written instrument attached to it as an exhibit or any statement
or documents incorporated in it by reference.'"  Hoffenberg v.
Bodell, supra, 2002 WL 31163871 at *3, citing Int'l Audiotext
Network, Inc. v. Am. Tel. Co., supra, 62 F.3d at 72.  In
addition, "[a] court may consider matters outside the pleading
for the purposes of adjudicating a motion to dismiss if those
documents are 'integral' to a plaintiff's claims -- even if the
plaintiff fails to append or allude to them to his complaint."
Grosz v. Museum of Modern Art, 09 Civ. 3706 (CM)(THK), 2010 WL
88003 at *23 (S.D.N.Y. Jan. 6, 2010) (McMahon, D.J.), citing
Cortec Indus., Inc. v. Sum Holding L.P., supra, 949 F.2d at 44;
accord Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d
Cir. 2006); Yung v. Lee, 432 F.3d 142, 146-47 (2d Cir. 2005).

Key Items contends that it relied on the following
documents in drafting its complaint: (1) a December 10, 2008
Memorandum from the Global Defendants to Key Items, showing the
return of 803 pairs of earrings from the Global Defendants to Key
Items (Bedke Aff. ¶ 7 and Ex. B); (2) Corporation Profile Reports
for Ultima Diamonds and the Global Defendants (Bedke Aff. ¶ 7 and

Ex. B); (3) a Federal Express label printed on February 9, 2009, for shipment from Ultima 2008 Ltd., ("Ultima 2008"), to Key Items and chart showing the return of 100 items from Ultima 2008 to Key Items on February 6, 2009 (Bedke Aff. ¶ 8 and Ex. C); (4) a March 3, 2009 e-mail from Key Items to Maierovitz offering to accept certain returns in exchange for payment of the full balance due (Bedke Aff. ¶ 9 and Ex. D); (5) a March 6, 2009 e-mail from Maierovitz and the Global Defendants to Key Items, stating: "Thank you for your credit note. . . . Since there was a tremendous confusion with our largest customer as we were running two parallel companies, we lost our major cash flow. . . . all of this will be cleared within the next few weeks.  Yes, I gave you 23 Feb as a payment date" (Bedke Aff. ¶ 10 and Ex. E); and (6) printouts from various online sources showing identical contact information for Ultima Diamonds and the Global Defendants and listing Maierovitz as the contact person for Ultima 2008 and Global Jewellery Solutions Ltd., ("Global Jewellery Solutions"), (Bedke Aff. ¶¶ 12-15 and Exs. F, G, H).  Key Items also attaches two Jewelers Board of Trade reports that it does not claim to have relied upon in drafting the complaint (Bedke Aff. ¶¶ 16-19 and Exs. J, I).

        "[T]he complaint must 'rel[y] heavily upon [the document's] terms and effect' for that document to be integral" to the complaint.  DeLuca v. AccessIT Group, Inc., 695 F. Supp.

2d 54, 60 (S.D.N.Y. 2010) (Leisure, D.J.), quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); accord Sahu v. Union Carbide Corp., 548 F.3d 59, 68 (2d Cir. 2008); Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).  "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but . . . was not attached to the complaint." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006); see Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007), quoting Cortec Indus., Inc. v. Sum Holding L.P., supra, 949 F.2d at 47 ("a document 'upon which [the complaint] solely relies and which is integral to the complaint' may be considered by the court in ruling on [a 12(b)(6)] motion"); see also Sahu v. Union Carbide Corp., supra, 548 F.3d at 68 (documents were not integral where they were not "necessary to the short and plain statement of the claim showing that the plaintiffs were entitled to relief") (internal quotation marks and alterations omitted).

        Although the complaint does make reference to events memorialized in the documents attached to the Bedke Affidavit (Compl. ¶ 16 ("Maierovitz advised Plaintiff that Defendants would not take delivery of" 803 pairs of earrings); Compl. ¶ 18 ("Maierovitz returned 100 rings from that portion of the Order

that was shipped October 15, 2008")), makes general reference to and quotes from the documents themselves (Compl. ¶ 19 ("Plaintiff agreed to accept more of the rings . . . 'up to a total of 30% of the balance . . .'"); Compl. ¶ 20 ("Maierovitz acknowledged receipt of Plaintiff's March 3 email"), and cites facts contained in these documents (Compl. ¶¶ 2-4 (listing the addresses of the corporate defendants)), none of these documents are integral to Key Items' complaint.  Key Items does not "rely heavily on the terms and effect" of any of these documents in stating a claim for relief and its claims do not "stand or fall" based on the legal implications of any of these documents.  See PB Americas Inc. v. Continental Cas. Co., 690 F. Supp. 2d 242, 253-54 (S.D.N.Y. 2010) (Preska, D.J.) (although insurance policies were integral to insurance policy dispute, letter declining coverage was not); Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (Leisure, D.J.) (documents purportedly ratifying agreement in question were not integral to the complaint where, although the "complaint references facts only present in the extraneous documents, plaintiffs do not 'rel[y] heavily upon [the documents'] terms and effect[s]').[1]

---

[1] I note that the extraneous documents cannot be deemed to be incorporated into the complaint by reference for the additional reason that the complaint does not "make 'a clear, definite and substantial reference to the documents.'" DeLuca v. AccessIT Group, Inc., supra, 695 F. Supp. 2d at 60, quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003) (Marrero, D.J.); Madu, Edozie & Madu, P.C. v. SocketWorks Ltd.
(continued...)

I also decline, as a matter of discretion, to convert the Global Defendants' motion into one for summary judgment, which would permit consideration of material outside the complaint.  "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion:  the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material."  Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991). Because neither party has expressly moved for summary judgment and because the parties have not completed discovery, I decline to treat the Global Defendants' motion as one for summary judgment and shall not consider material outside the pleadings. See Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999) ("[a]ttachment of an affidavit or exhibit to a Rule 12(b)(6) motion . . . does not without more establish that conversion [to a summary judgment motion] is required"); Abbey v. 3F Therapeutics, Inc., 06 Civ. 409 (KMW), 2009 WL 4333819 at *5

---

[1](...continued)
Nigeria, supra, 265 F.R.D. at 123; DeMasi v. Benefico, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (Conner, D.J.).  Although the complaint quotes a portion of the March 3, 2009 e-mail from Key Items to Maierovitz (Compl. ¶ 19), "[l]imited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); see Sahu v. Union Carbide Corp., supra, 548 F.3d at 67.

(S.D.N.Y. Dec. 2, 2009) (Wood, D.J.) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a motion to dismiss, and thus complete discretion in determining whether to convert the motion to one for summary judgment.") (alterations omitted).

    B.  Key Items' Claims
       <u>Against the Global Defendants</u>

       1. Breach
         <u>of Contract</u>

Key Items first alleges that the Global Defendants are responsible for the price of the jewelry on a breach of contract theory.  The Global Defendants contend that Key Items' breach of contract claims against them must be dismissed because (1) Key Items has not pled the existence of a contract, and (2) to the extent Key Items has pled the existence of a contract, it is between Key Items and Ultima Diamonds and not with either or both of the Global Defendants (Memorandum of Law in Support of Defendant Ultima 2008, Ltd.'s Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6), dated Aug. 11, 2009 (Docket Item 15), ("Defs' Mem."), at 5).

"To form a valid contract under New York law[2], there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Leibowitz v. Cornell Univ., 584 F.3d 487, 507 (2d Cir. 2009), citing Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004).  Under the Uniform Commercial Code, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  N.Y. U.C.C. § 2-204(a).  The Global Defendants contend that Key Items does not adequately plead the existence of a contract because it does not annex a contract to its complaint or include "details about any parties, terms, dates or provisions of any contract" (Defs' Mem. at 5).

Drawing all inferences in Key Items' favor, however, the complaint alleges that Ultima Diamonds ordered goods from Key Items which Key Items delivered, that the parties agreed on the quantity, pricing method, product specifications and delivery dates for the jewelry and that this agreement was confirmed via e-mail by Key Items.  Key Items has, thus, alleged all the essential elements of a breach of contract claim -- offer, acceptance, consideration, and mutual assent.  See McFadden v.

---

[2]Both parties rely on New York law and do not claim that the law of any other forum applies; "such 'implied consent . . . is sufficient to establish choice of law.'"  Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004), quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000).  Accordingly, New York law applies to this matter.

Clarkeson, CV 09-0112, 2010 WL 2076001 at *4 (E.D.N.Y. May 18, 2010) (mutual assent exists where "there has been a meeting of the minds between the parties on all essential terms of the agreement."); Lomaglio Assocs. Inc. v. LBK Mktg. Corp., 94 Civ. 3208 (KTD), 1999 WL 705208 at *6 (S.D.N.Y. Sept. 10, 1999) (Duffy, D.J.), citing Fakhoury Enters., Inc. v. J.T. Distribs., 94 Civ. 2729 (PKL), 1997 WL 291961 at *3 (S.D.N.Y. June 2, 1997) (Leisure, D.J.) ("In a contract for a sale of goods, the essential terms are quantity, price, and time and manner of delivery.  The fact that one or more of these terms is left open is not fatal").  Key Items has also properly alleged an intent to be bound to the oral agreement.  The factors relevant to such a determination are:  "(1) any explicit statement that only a writing shall be binding; (2) partial performance; (3) complete negotiation of all terms; and (4) whether the subject matter of the contract is one that normally requires a written agreement." Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 179 (S.D.N.Y. 2007) (Wood, D.J.), citing R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 75-76 (2d Cir. 1984).  In this case, there was no statement that the parties would not be bound absent a written agreement, Key Items alleges that it delivered goods pursuant to the alleged contract, and, as noted above, nearly all essential terms were negotiated.  Key Items has, therefore, properly alleged the existence of a contract.  See Bazak Int'l

<u>Corp. v. Tarrant Apparel Grp.</u>, 378 F. Supp. 2d 377, 389-90
(S.D.N.Y. 2005) (Marrero, D.J.) (e-mail confirming oral agreement
created issues of fact concerning whether parties intended to be
bound).

   Although Key Items does properly allege the existence
of a contract, it does not allege that either or both of the
Global Defendants were parties to the contract.  Although the
complaint states generally that all corporate defendants "were
involved in the transactions described herein" (Compl. ¶ 6) and
alleges that the Global Defendants were involved in the return of
the goods at issue (Compl. ¶ 17), it alleges that Ultima Diamonds
placed the initial order, that the confirmation of the order was
sent to Maierovitz, and annexes invoices for the jewelry that are
addressed to Ultima Diamonds (Compl. ¶¶ 10-12 and Exs. A - B).
Furthermore, although Key Items alleges that "Maierovitz agreed
that Defendants would accept the remaining portion of the
[November 15, 2008] Order" (Compl. ¶ 14) and that "Defendants had
previously agreed to pay for" the 100 rings returned on February
9, 2009 (Compl. ¶ 18), these vague statements are insufficient to
properly allege the existence of a contract between Key Items and
the Global Defendants.  <u>See Rodriguez v. It's Just Lunch, Int'l</u>,
07 Civ. 9227 (SHS)(KNF), 2010 WL 685009 at *10 (S.D.N.Y. Feb. 23,
2010) (Fox, M.J.) (Report & Recommendation) (in order to
withstand dismissal, "a claimant must demonstrate the existence

of an enforceable contract, through specific allegations about the parties to the agreement, the date of the contract's formation, and the contract's 'major terms.'"); Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 416 (S.D.N.Y. 2009) (Scheindlin, D.J.) (allegation that "[plaintiff] agreed to pay for [defendant's] services on an hourly basis" was insufficient to properly allege the existence of a binding contract); Lehman v. Garfinkle, 08 Civ. 9385 (SHS), 2009 WL 2973207 (S.D.N.Y. Sept. 16, 2009) (Stein, D.J.) (plaintiff did not properly allege the existence of a contract between plaintiff and certain individual defendants where the complaint alleged that "'the Defendants' made various promises to him" and the exhibits attached to plaintiff's complaint showed that promises were made by other defendants).

a. Alter Ego

Key Items contends that it has, nonetheless, adequately alleged that the Global Defendants are parties to the contract because the Global Defendants are the alter egos of Ultima Diamonds and Maierovitz (Pl's Opp. at 3). Key Items does not expressly allege this theory in the complaint, nor do the allegations in the complaint support such a theory.

The doctrine of alter ego or "piercing the corporate veil" liability permits the owner of a corporation or a corporate

affiliate, under certain limited circumstances, to be held liable for the corporation's obligations.  See, e.g., Morris v. N.Y.S. Dep't of Taxation & Fin., 82 N.Y.2d 135, 140-41, 623 N.E.2d 1157, 1160, 603 N.Y.S.2d 807, 810 (1993); accord Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) ("The doctrine . . . is invoked 'to prevent fraud or to achieve equity.'"), quoting Int'l Aircraft Trading Co. v. Mfrs. Trust Co., 297 N.Y. 285, 292, 79 N.E.2d 249, 252 (1948); see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (Koeltl, D.J.), quoting Walkovszky v. Carlton, 18 N.Y.2d 414, 417, 223 N.E.2d 6, 7, 276 N.Y.S.2d 585, 587 (1966) ("New York courts will pierce the corporate veil 'whenever necessary to prevent fraud or achieve equity.'").

In order to pierce the corporate veil, a party must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury."  JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., supra, 306 F. Supp. 2d at 485; see also, e.g., Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1052 (2d Cir. 1997); Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997); Am. Fuel Corp. v. Utah Energy

Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997); Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988); TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749, 751, 680 N.Y.S.2d 891, 893 (1998); Morris v. N.Y.S. Dep't of Taxation & Fin., supra, 82 N.Y.2d at 141, 623 N.E.2d at 1160-61, 603 N.Y.S.2d at 810-11; Lowendahl v. Balt. & Ohio R.R. Co., 247 A.D. 144, 156-57, 287 N.Y.S. 62, 75-76 (1st Dep't 1936), aff'd, 272 N.Y. 360, 6 N.E.2d 56 (1936).  There is a corollary of the doctrine referred to as "reverse" piercing under which a corporation, in some circumstances, may be liable for the obligations of its owners.  See Am. Fuel Corp. v. Utah Energy Dev. Co., supra, 122 F.3d at 134.

The determination of whether the corporate veil should be pierced requires a fact-specific inquiry; there are no bright-line rules.  See MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir. 2001); Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., supra, 933 F.2d at 139, quoting Am. Protein Corp. v. AB Volvo, supra, 844 F.2d at 60 ("Applying [the relevant] factors to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that 'differs with the circumstances of each case.'"),

New York courts consider the following factors in deciding whether the requisite domination is present:

(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., supra, 306 F. Supp. 2d at 486, quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., supra, 933 F.2d at 139; see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, supra, 268 F.3d at 63.

In addition, a court will pierce the corporate veil only when a "fraud or wrong" has been committed. Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., supra, 122 F.3d at 134 n.2, citing Morris v. N.Y.S. Dep't of Taxation & Fin., supra, 82 N.Y.2d at 141, 623 N.E.2d at 1160-61, 603 N.Y.S.2d at 810-11 ("[T]he New York Court of Appeals held that a conjunctive test was applicable and required a showing of both domination and fraud or wrong to justify the piercing of a corporate veil."); EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y.

2005) (Sweet, D.J.); Smoothline Ltd. v. N. Am. Foreign Trading
Corp., 00 Civ. 2798 (DLC), 2002 WL 31885795 at *9 (S.D.N.Y. Dec.
27, 2002) (Cote, D.J.).  However, proof of the five elements of
common law fraud is not required to satisfy the "fraud or wrong"
requirement.  See Rotella v. Derner, 283 A.D.2d 1026, 1027, 723
N.Y.S.2d 801, 802 (4th Dep't 2001), quoting Lederer v. King, 214
A.D.2d 354, 354, 625 N.Y.S.2d 149, 150 (1st Dep't 1995) ("A
plaintiff is 'not required to plead or prove actual fraud in
order to pierce the corporate defendant's corporate veil, but
[must prove] only that the individual defendant's control of the
corporate defendant was used to perpetrate a wrongful or unjust
act toward plaintiff.'"); see generally JSC Foreign Econ. Ass'n
Technostroyexport v. Int'l Dev. & Trade Servs., Inc., supra, 306
F. Supp. 2d at 486; Smoothline Ltd. v. N. Am. Foreign Trading
Corp., supra, 2002 WL 31885795 at *11.

        As an initial matter, Key Items does not allege that
Ultima Diamonds is owned by either of the Global Defendants or
that Maierovitz owns any of the corporate defendants.

        Moreover, even if I construe Key Items' allegation that
the corporate defendants are "singularly controlled and dominated
by" Maierovitz as an allegation that he owned the three
corporations and that Key Items has, therefore, adequately
alleged the first element -- domination and control of the
corporation -- it has not alleged any facts suggesting that

Maierovitz or the Global Defendants used the corporate form to perpetrate a fraud or other tort.  Freeman v. Complex Computing Co., supra, 119 F.3d at 1053 (even where defendant completely controlled corporation, "New York law will not allow the corporate veil to be pierced in the absence of a showing that this control was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights . . . ." (inner quotes omitted)); see Badian v. Elliott, 165 F. App'x 886, 889-90 (2d Cir. 2006) (second element adequately alleged where plaintiff claimed individual defendant transferred corporate assets without consideration to render corporation unable to perform contractual obligations owed to plaintiff).  Although Key Items alleges that Ultima Diamonds breached its contract, there are no allegations that Maierovitz or the Global Defendants used the corporate form to breach the contract or to frustrate contractual obligations. Use of the corporate form to avoid personal liability is not improper, see Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979); Walkovszky v. Carlton, supra, 18 N.Y.2d at 417, 223 N.E.2d at 7, 276 N.Y.S.2d at 587; Bartle v. Home Owners Cooperative, 309 N.Y. 103, 106, 127 N.E.2d 832, 833 (1955); see generally LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999), and even if that were Maierovitz's sole reason for

doing business through Ultima Diamonds, that fact would not justify imposing personal liability on him.

Key Items argues that it is entitled to additional discovery before its alter ego claim is dismissed.  The cases cited in support of this proposition, however, are distinguishable.  In Bd. of Mgrs of Arches at Cobble Hill Condominium v. Hicks & Warren, LLC, 18 Misc.3d 1103(A) at *6-*7, 856 N.Y.S.2d 22 (Table) (Sup. Ct. 2007), the court declined to grant summary judgment dismissing plaintiff's alter ego claim because plaintiff was entitled to certain discovery in order to "prove the factual allegations in its complaint;" the plaintiff was not seeking discovery in order to draft an allegation. Although pre-dismissal discovery was ordered in First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 177 (2d Cir. 1998)[3], that case involved a challenge to plaintiff's theory of subject matter jurisdiction.  In resolving such a motion, facts and evidence outside the pleadings are routinely considered and a plaintiff must establish subject matter jurisdiction by a "preponderance of the evidence." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (emphasis added).  Limited discovery, thus, may be appropriate

---

[3]Plaintiff actually cites First City, Texas-Houston, N.A. v. Rafidain Bank, 281 F.3d 48 (2d Cir. 2002).  The cited portion of that decision, however, is a quoted passage from First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172 (2d Cir. 1998) that appears in a section describing the procedural background of the case.

prior to dismissal for lack of subject matter jurisdiction.  See
Filus v. Lot Polish Airlines, 907 F.2d 1328, 1332 (2d Cir. 1990).
These standards are not applicable to this motion under
Fed.R.Civ.P. 12(b)(6), which is directed only to the sufficiency
of the pleadings.  Indeed, courts routinely dismiss alter ego
claims pursuant to Fed.R.Civ.P. 12(b)(6).  See White v. Nat'l
Home Prot., Inc., 09 Civ. 4070 (SHS), 2010 WL 1706195 at *4-*5
(Apr. 21, 2010) (Stein, D.J.); Koninklijke Philips Elecs N.V. v.
The ADS Group, 694 F. Supp. 2d 246, 252 (S.D.N.Y. 2010) (Stearns,
D.J.); Two Kids From Queens, Inc. v. J&S Kidswear, Inc., 09-3690
(DRH)(AKT), 2010 WL 475319 at *3 (E.D.N.Y. Feb. 8, 2010).

           b.  De Facto Merger

          Key Items also claims that, although it did not have a
contract with the Global Defendants, the Global Defendants are
responsible for Ultima Diamonds' obligations under a theory of de
facto merger.  "The de facto merger doctrine creates successor
liability when the transaction between the purchasing and selling
companies is in substance, if not in form, a merger."  New York
v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 205 (2d Cir. 2006);
Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir.
2003).
          Courts consider the following factors in determining
whether a de facto merger has occurred:  "(1) continuity of
ownership; (2) cessation of ordinary business and dissolution of

                              24

the acquired corporation as soon as possible; (3) assumption by
the purchaser of the liabilities ordinarily necessary for the
uninterrupted continuation of the business of the acquired
corporation; and (4) continuity of management, personnel,
physical location, assets, and general business operation."  New
York v. Nat'l Serv. Indus., supra, 460 F.3d at 209; accord Cargo
Partner AG v. Albatrans, Inc., supra, 352 F.3d at 46; Barrack,
Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C., 08 Civ.
02152 (PKL), 2008 WL 759353 at *7 (S.D.N.Y. Mar. 20, 2008)
(Leisure, D.J.).  Except for the first factor, "[n]ot all of
these elements are necessary to find a de facto merger."  Cargo
Partner AG v. Albatrans, Inc., supra, 352 F.3d at 46, citing
Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 574-75, 730
N.Y.S.2d 70, 71 (1st Dep't 2001); TMS Entm't Ltd. v. Madison
Green Entm't Sales, Inc., 03 Civ. 0517 (GBD), 2005 WL 476663 at
*3 (S.D.N.Y. Feb. 28, 2005) (Daniels, D.J.).  Indeed, "the Court
should consider the factors 'in a flexible manner that disregards
mere questions of form and asks whether, in substance, it was the
intent of the successor to absorb and continue the operation of
the predecessor.'"  Barrack, Rodos & Bacine v. Ballon Stoll Bader
& Nadler, P.C., supra, 2008 WL 759353 at *7, quoting AT&S
Transp., LLC v. Odyssey Logistics & Tech. Corp., 803 N.Y.S.2d
118, 119, 22 A.D.3d 750, 752 (2d Dep't 2005).

Nevertheless, the first factor -- continuity of ownership -- is essential to a finding of a de facto merger.  New York v. Nat'l Serv. Indus., supra, 460 F.3d at 214; Cargo Partner AG v. Albatrans, Inc., supra, 352 F.3d at 46; see also Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C., supra, 2008 WL 759353 at *8; Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (Sweet, D.J.); In re New York City Asbestos Litig., 15 A.D.3d 254, 256, 789 N.Y.S.2d 484, 487 (1st Dep't 2005) ("[B]ecause continuity of ownership is the essence of a merger, it is a necessary element of any de facto merger finding . . . .") (internal quotation marks omitted).

Key Items does not allege that Maierovitz owned Ultima Diamonds, Ultima 2008 or Global Jewellery Solutions.  As noted above, it alleges only that the three companies "are singularly controlled and dominated by" Maierovitz (Compl. ¶ 6).  In the absence of an allegation of continuity of ownership, Key Items has not stated a claim for de facto merger.  In addition, although Key Items alleges that the Global Defendants had the same business address as Ultima Diamonds, that all three entities are Ontario corporations, and that Maierovitz controlled all three entities, it does not allege that Ultima Diamonds ceased operating, or that the Global Defendants assumed Ultima Diamonds' liabilities.  Thus, even if continuity of ownership were alleged,

the paucity of allegations concerning the other relevant factors defeats any de facto merger claim.

Accordingly, because Key Items does not allege the existence of a contract between itself and the Global Defendants and because it does not adequately allege a basis for piercing the corporate veil or the existence of a de facto merger, Key Items' breach of contract claim against the Global Defendants is dismissed.

2.  Account Stated

Key Items next alleges that the Global Defendants are responsible for the price of jewelry delivered to Ultima Diamonds on a theory of account stated.  Specifically, they allege that because the invoice for $112,917.96 annexed to the complaint "represents a valid and accurate account stated," all defendants are responsible for this amount (Compl. ¶¶ 27-28).  The Global Defendants argue that because Key Items never sent this invoice to them, Key Items' account stated claim against them must be dismissed (Defs' Mem. at 8).

An account stated "is an agreement, express or implied, . . . independent of the underlying agreement, as to the amount due on past transactions."  Leepson v. Allan Riley Co., Inc., 04 Civ. 3720 (LTS), 2006 WL 2135806 at *4 (S.D.N.Y. July 31, 2006) (Swain, D.J.) (internal quotations marks omitted); LLT Int'l,

Inc. v. MCI Telecomms. Corp., 69 F. Supp. 2d 510, 516 (S.D.N.Y.
1999) (Sweet, D.J.) ("an account stated refers to an express or
implied promise by a debtor to pay a stated sum of money which
the parties have agreed is the amount due"); Kirk v. Heppt, 532
F. Supp. 2d 586, 594 (S.D.N.Y. 2008) (Sweet, D.J.), quoting
LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham, supra, 185 F.3d
at 64 ("An account stated is 'an agreement between the parties to
an account based upon prior transactions between them . . .'").
"To state a claim for an account stated, the plaintiff must plead
that: '(1) an account was presented; (2) it was accepted as
correct; and (3) debtor promised to pay the amount stated.'"  IMG
Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395,
411 (S.D.N.Y. 2009) (Preska, D.J.), quoting The Haskell Co. v.
Radiant Energy Corp., 05-CV-4403, 2007 WL 2746903 at *12
(E.D.N.Y. Sept. 19, 2007); Air Atlanta Aero Eng'g Ltd. v. SP
Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 198 (S.D.N.Y. 2009)
(Marrero, D.J.); Leepson v. Allan Riley Co., Inc., supra, 2006 WL
2135806 at *4; see Sony Music Entm't Inc. v. Kall, 01 Civ. 3530
(NRB), 2001 WL 1356201 at *2 (S.D.N.Y. Nov. 2, 2001) (Buchwald,
D.J.) ("In order to prove a prima facie case for an account
stated, plaintiffs must show that they sent invoices to the
defendant to which defendant never objected but never paid.").

        "The second and third requirements . . . may be implied
if 'a party receiving a statement of account keeps it without

objecting to it within a reasonable time or if the debtor makes partial payment.'" IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 679 F. Supp. 2d at 411, quoting LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, supra, 185 F.3d at 64; Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, supra, 637 F. Supp. 2d at 199; see White Diamond Co., Ltd. v. Castco, Inc., 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006) (Sweet, D.J.) ("Both partial payment and assurances of payment after receipt of an account stated are evidence of assent to the account stated").

The complaint does not allege that any statement was delivered to the Global Defendants.  Although Key Items alleges that "[p]laintiff sent Defendants an itemized statement of monies due and owing" (Compl. ¶ 21), the document to which this paragraph refers is annexed to the complaint and addressed to Ultima Diamonds (Compl. Ex. D).  See Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (Marrero, D.J.) ("If a plaintiff's allegations are contradicted by [an exhibit to the complaint], those allegations are insufficient to defeat a motion to dismiss"); 2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC, 00 Civ. 5773 (GEL), 2001 WL 410074 at *9 (S.D.N.Y. Apr. 23, 2001) (Lynch, D.J.) ("Plaintiff's conclusory allegations . . . are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss.").  Because there is no allegation that the statement

was sent to the Global Defendants, any failure to object to its terms cannot impose liability on a theory of account stated.  See Newburgh Winnelson Co. v. Baisch Mech., Inc., 30 A.D.3d 495, 496, 817 N.Y.S.2d 359, 360 (2d Dep't 2006) (granting summary judgment dismissing plaintiff's account stated claim where "plaintiff had not sold any goods to [defendant], nor had it submitted any invoices and/or statements to [defendant]").

Furthermore, even if Key Items had sent the account to the Global Defendants, there can be no liability because, as noted above, there was no underlying promise to pay by the Global Defendants.  See Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, supra, 637 F. Supp. 2d at 198 (plaintiff "cannot use the mechanism of an account stated claim to circumvent the lack of a contract between the parties.  Without an express agreement or some other form of indebtedness between [defendant] and [plaintiff], a cause of action for an account stated is unavailable."); White Diamond Co., Ltd. v. Castco, Inc., supra, 436 F. Supp. 2d at 623 ("an 'account stated' . . . must be founded upon previous transactions creating the relationship of debtor and creditor"); see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, supra, 185 F.3d at 64-66 (denying law firm's motion for summary judgment on their account stated claims where material issues of fact existed with respect to whether defendant

was the "client for whom all the legal services were performed or that he had agreed to pay for all such services rendered . . .").

Thus, Key Items does not allege that they delivered any statement to the Global Defendants or that the Global Defendants had any underlying obligation to pay Key Items.  Furthermore, as noted above, Key Items does not allege a basis for the Global Defendants' liability for Ultima Diamonds' debts under alter ego or de facto merger theories.  Key Items' account stated claims against the Global Defendants are, therefore, dismissed.

C.  Motion to Amend

Key Items requests that it be granted leave to amend if the Global Defendants' motion to dismiss is granted (Pl's Opp. at 14-15).  It has not, however, submitted a proposed amended pleading.  The Global Defendants contend that granting leave to amend would be futile because the allegations in plaintiff's opposition papers do not state a claim upon which relief can be granted (Defs' Reply at 10).

Generally, "a complete copy of the proposed amended complaint must accompany the motion [to amend] so that both the Court and opposing parties can understand the exact changes sought." Segatt v. GSI Holding Corp., 07 Civ. 11413 (WHP), 2008 WL 4865033 at *4 (S.D.N.Y. Nov 3, 2008) (Pauley, D.J.); accord In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig., 06

Civ. 643 (GEL), 07 Civ. 8686 (GEL), 07 Civ. 8688 (GEL), 2008 WL
4962985 at *3 (S.D.N.Y. Nov. 20, 2008) (Lynch, D.J.); 6 Charles
A. Wright, Arthur R. Miller & Mary K. Kane, <u>Federal Practice &
Procedure</u> § 1485 at 688 (2d ed. 1990).  As discussed above, Key
Items' complaint lacks certain essential allegations necessary to
state a claim against the Global Defendants.  Without the benefit
of a proposed amended pleading, it is not possible to know
whether Key Items could make these allegations consistent with
Fed.R.Civ.P. 11.  Because I cannot determine whether an amended
complaint could cure the deficiencies identified above, I
conclude that the more efficient course is to defer any
assessment of an amended pleading until Key Items submits a
definite proposed amended pleading.

        Key Items' application to amend its complaint is, thus,
denied without prejudice to renewal upon the submission of a
formal motion pursuant to Fed.R.Civ.P. 15.

IV.  <u>Conclusion</u>

        Accordingly, for all the foregoing reasons, the Global
Defendants' motion to dismiss the claims against them is granted

and Key Items' application to amend its complaint is denied

without prejudice to renewal by way of formal motion.


Dated:   New York, New York
         August 17, 2010

                                   SO ORDERED


                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge


Copies transmitted to:

Kathryn L. Bedke, Esq.
Paduano & Weintraub LLP
9th Floor
1251 Avenue of the Americas
New York, New York  10020

Jennifer A. Redmond, Esq.
Law Offices of Jennifer Redmond
12th Floor
44 Wall Street
New York, New York  10005

Francis D. Bigelow, II
Sadis & Goldberg
21st Floor
551 Fifth Avenue
New York, New York  10176