```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

KEY ITEMS, INC.,                      :

                    Plaintiff,        :

     -against-                        :    09 Civ. 3729 (HBP)

ULTIMA DIAMONDS, INC.,                :    MEMORANDUM OPINION
GLOBAL JEWELLERY SOLUTIONS LTD.,           AND ORDER
ULTIMA LTD. 2008 and                  :
EDWARD MAIEROVITZ
                                      :
                    Defendants.
                                      :

----------------------------------X
```

            PITMAN, United States Magistrate Judge:


I.    Introduction


          By notice of motion dated October 8, 2010 (Docket Item

31), plaintiff Key Items, Inc. ("Key Items") moves for leave to

file an amended complaint against all defendants.  For the

reasons set forth below, the motion is granted to the extent that

Key Items seeks to withdraw its claims for breach of contract and

an account stated against Edward Maierovitz ("Maierovitz").  The

motion is denied in all other respects.

II.  Facts

    A.  Background

        This action arises out of the alleged failure of Ultima 2008 Ltd. ("Ultima 2008") and Global Jewellery Solutions, Inc. ("Global Jewellery") (collectively, "Global Defendants") to pay for two shipments of jewelry that Ultima Diamonds, Inc. ("Ultima Diamonds") ordered from Key Items.[1]

        On or about September 12, 2008, Ultima Diamonds ordered 1,800 rings and 1,500 pairs of earrings from Key Items.  The rings were to be delivered on approximately October 15, 2008 and the earrings were to be delivered approximately one month later (Proposed Amended Complaint ("Am. Compl."), attached to the Affidavit of Kathryn L. Bedke in Support of Motion to Amend Complaint (Docket Item 32), ("Bedke Aff."), ¶ 12).  Key Items confirmed this order in an e-mail dated September 12, 2008 which states, under the heading "Recap of conversation with Rob," the method of pricing the jewelry, the product specifications and the dates on which the rings and the earrings would be delivered (Am. Compl. Ex. C).

---

        [1]The factual allegations contained in the proposed Amended Complaint are substantially the same as those contained in the original Complaint (Docket Item 1).

Key Items delivered the rings to Ultima Diamonds on approximately October 15, 2008 (Am. Compl. ¶ 14 and Ex. D).  On or around October 23, 2008, Maierovitz, who, according to the complaint, "singularly control[s] and dominate[s]" the corporate defendants, notified Key Items that he might not need the shipment of earrings (Am. Compl. ¶¶ 8, 15).  Key Items informed Maierovitz that it had already prepared a "significant" portion of this order for delivery, but that it was cancelling the order for approximately 700 pairs of earrings.  Maierovitz agreed to accept the remainder of the shipment (Am. Compl. ¶¶ 15-16).

Key Items shipped the remaining 803 pairs of earrings to Ultima Diamonds on approximately December 3, 2008 (Am. Compl. ¶ 17 and Ex. E).  Maierovitz subsequently informed Key Items that he would not accept the shipment (Am. Compl. ¶ 18).  Key Items and the Global Defendants subsequently arranged for the return of the earrings (Am. Compl. ¶¶ 19-21).  On or about February 9, 2009, Maierovitz returned 100 of the rings that had been delivered in October 2008 (Am. Compl. ¶ 22) and on or about March 3, 2009, Maierovitz notified Key Items via e-mail that Ultima Diamonds and the Global Defendants wanted to return still more of the rings delivered in October 2008 (Am. Compl. ¶ 24).  Key Items responded that it would accept a return of the rings attributable to up to 30 percent of the account balance if Maierovitz paid the

remainder of the rings (Am. Compl. ¶ 25).  On March 17, 2009, Key Items sent Ultima Diamonds a statement reflecting a $112,917.96 account balance (Am. Compl. ¶ 29 and Ex. J).  Although Key Items has repeatedly requested payment, none of the defendants has paid this balance (Am. Compl. ¶ 30).

Key Items alleges that Ultima Diamonds and the Global Defendants "exist [] at the pleasure of Maierovitz" and are "run in a fashion that cannot be distinguished from the management of Maierovitz's personal affairs" (Am. Compl. ¶ 8).  Further, Key Items alleges that Maierovitz "is a Director, Vice-President and Secretary of Ultima 2008," "is a Director, Managing Director and President of Ultima [Diamonds]," and "authorized the registration of Global [Jewellery]" (Am. Compl. ¶ 6).  Finally, Key Items alleges that Ultima Diamonds and the Global Defendants are all Ontario corporations, share the same address, and were involved in the transaction that is the subject of the complaint (Am. Compl. ¶ 8).

   B.  Proceedings to Date
       and the Pending Motion

Key Items commenced this action on April 13, 2009.  In its original Complaint, Key Items alleged breach of contract and account stated claims against all defendants (Docket Item 1).  By an Opinion and Order dated August 17, 2010 (Docket Item 26), I

granted the Global Defendants motion to dismiss the claims against them and denied Key Items' motion to amend the complaint without prejudice.

The proposed Amended Complaint[2] asserts claims for breach of contract and an account stated against Ultima Diamonds only.  With respect to Maierovitz and the Global Defendants, the proposed Amended Complaint would add claims for: (1) tortious interference with contractual relations, and (2) alter ego liability.  The Global Defendants have opposed the motion, while defendants Ultima Diamonds and Maierovitz have not.

---

[2]Key Items has submitted a proposed Amended Complaint (Proposed Amended Complaint ("Am. Compl."), attached to the Affidavit of Kathryn L. Bedke in Support of Motion to Amend Complaint (Docket Item 32), ("Bedke Aff."), Ex. A), as well as a proposed Second Amended Complaint (Proposed Second Amended Complaint ("Second Am. Compl."), attached to the Reply Declaration of Steven Castaldo in Further Support of Plaintiff's Motion to Amend (Docket Item 34), ("Castaldo Reply Decl."), Ex. 1).  Key Items states that it submitted the proposed Second Amended Complaint in an effort to meet the objections the Global Defendants asserted in their opposition papers (Castaldo Reply Decl. ¶ 5).  However, considering the proposed Second Amended Complaint first submitted in Key Items' reply would be unfair to all of the defendants because it would deprive them of an opportunity to respond to the revised amended complaint.  See Physicians Comm. for Responsible Med. v. Johnson, 436 F.3d 326, 331 n.6 (2d Cir. 2006).  Accordingly, I shall disregard the proposed Second Amended Complaint and only address the proposed Amended Complaint in resolving this motion.

III.  <u>Analysis</u>

    A.   Standards Applicable to
          <u>Motions to Amend the Pleadings</u>

       The standards applicable to a motion to amend a plead-
ing are well settled and require only brief review.  In general,
a motion to amend is governed by Fed. R. Civ. P. 15(a), which
provides that leave to amend should be freely granted when
justice so requires.  Fed. R. Civ. P. 15(a); <u>Foman v. Davis</u>, 371
U.S. 178, 182 (1962); <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482
F.3d 184, 200 (2d Cir. 2007); <u>Aetna Cas. & Sur. Co. v. Aniero
Concrete Co.</u>, 404 F.3d 566, 603 (2d Cir. 2005); <u>Dluhos v. Float-
ing & Abandoned Vessel, Known as "New York"</u>, 162 F.3d 63, 69 (2d
Cir. 1998); <u>Gumer v. Shearson, Hammill & Co.</u>, 516 F.2d 283, 287
(2d Cir. 1974); <u>Aniero Concrete Co. v. New York City Constr.
Auth.</u>, 94 Civ. 9111 (CSH), 1998 WL 148324 at *7 (S.D.N.Y. Mar.
30, 1998) (Haight, D.J.), <u>aff'd</u> <u>sub</u> <u>nom.</u>, <u>Aetna Cas. & Sur. Co.
v. Aniero Concrete Co.</u>, 404 F.3d 566 (2d Cir. 2005).  "Nonethe-
less, the Court may deny leave if the amendment (1) has been
delayed unduly, (2) is sought for dilatory purposes or is made in
bad faith, (3) the opposing party would be prejudiced, or (4)
would be futile." <u>Lee v. Regal Cruises, Ltd.</u>, 916 F. Supp. 300,
303 (S.D.N.Y. 1996) (Kaplan, D.J.), <u>aff'd</u>, 116 F.3d 465 (2d Cir.
1997); <u>see</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, <u>supra</u>, 482 F.3d at

200; Ellis v. Chao, 336 F.3d 114, 126-27 (2d Cir. 2003);

Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 00 Civ. 3235

(LTS)(MHD), 2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003)

(Swain, D.J.); Am. Home Assur. Co. v. Jacky Maeder (Hong Kong)

Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.).

        A proposed amendment is futile when it fails to state a

claim.  Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir.

1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257

(S.D.N.Y. 1999) (Sweet, D.J.); Parker v. Sony Pictures Entm't,

Inc., 19 F. Supp. 2d 141, 156 (S.D.N.Y. 1998) (Kaplan, D.J.),

aff'd in pertinent part, vacated in part on other grounds sub

nom., Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir.

2000); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271,

274 (S.D.N.Y. 1996) (Koeltl, D.J.); Prudential Ins. Co. v. BMC

Indus., Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (Sweet,

D.J.); see generally Dluhos v. Floating & Abandoned Vessel Known

as "New York", supra, 162 F.3d at 69-70.  The party opposing the

amendment has the burden of demonstrating that leave to amend

would be futile.  Staskowski v. Cnty. of Nassau, 05 Civ. 5984

(SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007); see

also Lugosch v. Congel, No. 00 Civ. 784 (RFT), 2002 WL 1001003 at

*1 (N.D.N.Y. May 14, 2002).

Leave to amend may be denied as futile "where the claim or defense proposed to be added has no colorable merit." Oliver v. DeMarinis & Co., 90 Civ. 7950 (SS), 1993 WL 33421 at *2 (S.D.N.Y. Jan. 29, 1993) (inner quotations omitted) (Lee, M.J.); see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 783 (2d Cir. 1984) (if the movant has "colorable grounds for relief," justice requires that leave to amend be granted in the absence of undue delay, bad faith, or prejudice). The "'colorable grounds' requirement mandates that a district court may not deny a motion for leave to amend a pleading [on futility grounds] when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Children First Found. Inc. v. Martinez, No. 04 Civ. 0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y. Dec. 27, 2007), citing in part Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 244 (2d Cir. 2007); see also Estate of Ratcliffe v. Pradera Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.); Journal Publ'g Co. v. Am. Home Assur. Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991) (Leisure, D.J.); Prudential Ins. Co. v. BMC Indus., Inc., supra, 655 F. Supp. at 711.

Therefore, an amendment to a complaint may be denied as futile if a defendant can show that there are no "set of facts

consistent with the allegations in the complaint" which would entitle the plaintiff to relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at 555 (overruling the standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) that a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); see also Oliver Sch., Inc. v. Foley, 930 F.2d 248, 252-53 (2d Cir. 1991) (discussing the standard for denying an amendment as futile prior to Bell Atlantic); Blaskiewicz v. Cnty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (same).

The Court of Appeals has also repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. See, e.g., Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000); Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Guzman v. Bevona, 90 F.3d 641, 649 (2d Cir. 1996); see generally Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000).

B.   Application of the
     Foregoing Principles to the
     <u>Proposed Amended Complaint</u>

Several aspects of the proposed Amended Complaint are
unopposed.  Specifically, Key Items' withdrawal of its breach of
contract claim against Maierovitz and the withdrawal of its claim
for an account stated against all defendants other than Ultima
Diamonds are not opposed.  Thus, to the extent the proposed
Amended Complaint makes these changes, the motion is granted.

The Global Defendants do oppose the remaining aspects
of the proposed Amended Complaint as futile.

1.   Lack of Personal
     <u>Jurisdiction</u>

The Global Defendants first oppose the motion to amend
on the ground that the claims would not withstand a motion to
dismiss because the court lacks personal jurisdiction over the
Global Defendants (Memorandum of Law in Opposition to Plaintiff
Key Items Inc.'s Motion to Amend ("Def's' Mem."), at 2).  This
argument must be rejected because the Global Defendants failed to
assert it in their Rule 12(b) motion addressed to the original
Complaint, and their failure to raise the objection at that time
operates as a waiver.  <u>Rowley v. McMillan</u>, 502 F.2d 1326, 1332-33
(4th Cir. 1974); <u>Sears Petroleum & Transp. Corp. v. Ice Ban Am.,</u>

Inc., 217 F.R.D. 305, 307 (N.D.N.Y. 2003); Kontokosta v. Vill. of
Greenport, 87 Civ. 3432 (JMC), 1988 WL 132834 at *2 (S.D.N.Y.
Dec. 2, 1988) (Cannella, D.J.); Ross v. U.S., 574 F. Supp. 536,
539-40 (S.D.N.Y. 1983) (Duffy, D.J.); Brohan v. Volkswagen M'f'g
Corp. of Am., 97 F.R.D. 46, 48 (E.D.N.Y. 1983).

### 2.   Tortious Interference
with Contractual Relations

Key Items next seeks to amend its complaint to add a
claim for tortious interference with contractual relations
against Maierovitz and the Global Defendants (Am. Compl. ¶ 44).

Under New York law,[3] in order to state a claim for
tortious interference with contractual relations, a plaintiff
must allege: "(1) the existence of a valid contract between the
plaintiff and a third party; (2) the defendant's knowledge of the
contract; (3) the defendant's intentional procurement of the
third-party's breach of the contract without justification; (4)
actual breach of the contract; and (5) damages resulting
therefrom." Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02
(2d Cir. 2006), quoting Lama Holding Co. v. Smith Barney Inc., 88

---

[3]The parties' briefs rely exclusively on New York law; "such
'implied consent . . . is sufficient to establish choice of
law.'" Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir.
2004), quoting Krumme v. Westpoint Stevens, Inc., 238 F.3d 133,
138 (2d Cir. 2000). Accordingly, New York law applies to this
matter.

N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996); White Plains Coat & Apron Co. v. Cintas Corp., 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383, 835 N.Y.S.2d 530, 532 (2007).

If the defendant is a corporate director or officer of the breaching party, additional elements must be alleged because "'[a] corporate officer or director generally cannot be liable for tortiously interfering with [its corporation's] contract[s].'" Roselink Investors, LLC v. Shenkman, 386 F. Supp. 2d 209, 228 (S.D.N.Y. 2004) (Mukasey, D.J.), citing Chardin v. Turkie, 97 Civ. 4643, 1998 WL 886986 at *1 (S.D.N.Y. Dec. 18, 1998) (Martin, D.J.).  "'Where the corporate officer/director is acting within the scope of his or her authority, the officer/director is not a third party vis-a-vis the corporation and as such cannot interfere with its own contract.'" Roselink Investors, LLC v. Shenkman, supra, 386 F. Supp. 2d at 228, citing Chardin v. Turkie, supra, 1998 WL 886986 at *1; see also Solow v. Stone, 994 F. Supp. 173, 181-82 (S.D.N.Y.) (Mukasey, D.J.), aff'd, 163 F.3d 151 (2d Cir. 1998); Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 78 (S.D.N.Y. 1995) (Leisure, D.J.); G.D. Searle & Co. v. Medicore Commc'n, Inc., 843 F. Supp. 895, 911 (S.D.N.Y. 1994) (Edelstein, D.J.); Murtha v. Yonkers Child Care Ass'n, 45 N.Y.2d 913, 915, 383 N.E.2d 865, 866, 411 N.Y.S.2d 219, 220 (1978).

Thus, to state a claim for tortious interference with contractual relations against an officer or director of a party to the contract, a plaintiff must also allege either: (1) the "defendants' acts were taken outside the scope of their employment;" or (2) the "defendants personally profited from their acts." G.D. Searle & Co. v. Medicore Commc'n, Inc., supra, 843 F. Supp. at 911; see also Chambers Assoc. LLC v. 105 Acquisition LLC, 37 A.D.3d 365, 366, 831 N.Y.S.2d 55, 56 (1st Dep't 2007); Petkanas v. Kooyman, 303 A.D.2d 303, 305, 759 N.Y.S.2d 1, 2 (1st Dep't 2003); Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp., 296 A.D.2d 103, 109-10, 744 N.Y.S.2d 384, 390-91 (1st Dep't 2002); Hoag v. Chancellor, Inc., 246 A.D.2d 224, 228-29, 677 N.Y.S.2d 531, 534 (1st Dep't 1998).

The Global Defendants argue, among other things, that Key Items has failed to allege but-for causation.  Their argument is persuasive.

A defendant can be liable for tortious interference with contractual relations only if it is a but-for cause of the breach.  Int'l Minerals & Res., S.A. v. Bomar Res., Inc., 5 F. App'x 5, 8 (2d Cir. 2001) ("The causation required is that 'but for' the activities of the defendant, there would have been no breach of the contract."); Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990) ("A plaintiff must allege that

13

there would not have been a breach but for the activities of defendants." (inner quotations omitted)).

The proposed Amended Complaint alleges that Key Items shipped the first installment of merchandise on October 15, 2008, accompanied by an invoice that stated payment was due on December 14, 2008 (Am. Compl. ¶ 14 and Ex. D).  However, the proposed Amended Complaint also alleges that Ultima Diamonds was defunct and without assets to pay for the merchandise at least as of October 31, 2008 (Am. Compl. ¶ 42).  This is problematic because if Ultima Diamonds was defunct and unable to perform prior to the date on which payment became due, the Global Defendants could not have been a but-for cause of the breach of contract, at least in the absence of an allegation that the Global Defendants were somehow responsible for Ultima Diamonds' inability to perform. The proposed Amended Complaint contains no such allegation.[4]

Because the proposed Amended Complaint alleges that Ultima Diamonds was unable to perform its contract with Key Items

---

[4]In paragraph 48 of the proposed Amended Complaint -- a paragraph that is not incorporated into Key Items' claim for tortious interference with contractual relations -- Key Items does allege that "[d]efendants Maierovitz, Ultima 2008 and Global [Jewellery] also transferred the rings and earrings Plaintiff sold to Ultima without consideration to render Ultima unable to perform its contractual obligation owed to Plaintiff, thereby causing Ultima to breach its contract with Plaintiff."  If this allegation were included in plaintiff's tortious interference claim, it probably would salvage the claim.

even before the date on which performance was due independently
of the Global Defendants' conduct, the Global Defendants could
not have been a but-for cause of Ultima Diamonds' breach.
Therefore, Key Items' proposed claim for tortious interference
with contractual relations is futile as to the Global Defendants.
Additionally, though Maierovitz does not make an argument con-
cerning but-for causation, the analysis is equally applicable to
the tortious interference with contractual relations claim
against him.  I do not reach the parties' other arguments con-
cerning this claim.

        3.   <u>Alter Ego Liability</u>

      Key Items also seeks to amend its complaint to hold
Maierovitz and the Global Defendants liable on Ultima Diamonds'
contractual obligations on an alter ego theory (Am. Compl. ¶ 51).
The Global Defendants again contend that such an amendment is
futile because it would not withstand a motion to dismiss (Def's'
Mem. at 2).

Under New York law,[5] the doctrine of alter ego liability, also known as "piercing the corporate veil" liability, permits the owner of a corporation or a corporate affiliate, under certain limited circumstances, to be held liable for the corporation's obligations, such as the contract at issue.  See, e.g., Morris v. N.Y.S. Dep't of Taxation & Fin., 82 N.Y.2d 135, 140-41, 623 N.E.2d 1157, 1160, 603 N.Y.S.2d 807, 810 (1993); accord Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991), quoting Int'l Aircraft Trading Co. v. Mfrs. Trust Co., 297 N.Y. 285, 292, 79 N.E.2d 249,

_____

[5]Again, the parties' briefs rely exclusively on New York law; "such 'implied consent . . . is sufficient to establish choice of law.'"  Motorola Credit Corp. v. Uzan, supra, 388 F.3d at 61, quoting Krumme v. Westpoint Stevens, Inc., supra, 238 F.3d at 138 (2d Cir. 2000).

In any event, the applicable legal standard for piercing the corporate veil is substantially the same in New York as it is in Ontario, Canada where Ultima Diamonds was incorporated.  See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (Koeltl, D.J.) (in order to pierce the corporate veil, a party must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury."); Abener Energia, S.A. v. Sunopta Inc. (2009), 61 B.L.R. 4th 313, para. 18 (Can. Ont. Sup. Ct. J.) ("In order to pierce the corporate veil, two factors must be established[:] (1) the alter ego must exercise complete control over the corporation . . . whose separate legal identity is to be ignored; and (2) the corporation . . . must be [an] instrument [] of a fraud or mechanism to shield the alter ego from its liability for illegal activity."); see also Haskett v. Trans Union of Canada Inc. (2003), 224 D.L.R. 4th 419, 63 O.R. 3d 577, para. 61 (Can. Ont. C.A.).

252 (1948) ("The doctrine . . . is invoked 'to prevent fraud or to achieve equity.'"); see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (Koeltl, D.J.), quoting Walkovszky v. Carlton, 18 N.Y.2d 414, 417, 223 N.E.2d 6, 7, 276 N.Y.S.2d 585, 587 (1966) ("New York courts will pierce the corporate veil 'whenever necessary to prevent fraud or achieve equity.'").

In order to pierce the corporate veil, a party must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., supra, 306 F. Supp. 2d at 485; see also, e.g., In re Vebeliunas, 332 F.3d 85, 91-92 (2d Cir. 2003); Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997); Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997); Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988); TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339, 703 N.E.2d 749, 751, 680 N.Y.S.2d 891, 893

(1998); <u>Morris v. N.Y.S. Dep't of Taxation & Fin.</u>, <u>supra</u>, 82

N.Y.2d at 141, 623 N.E.2d at 1160-61, 603 N.Y.S.2d at 810-11.

      The determination of whether the corporate veil should

be pierced requires a fact-specific inquiry; there are no bright-

line rules.  <u>See</u> <u>MAG Portfolio Consultant, GMBH v. Merlin Biomed</u>

<u>Grp. LLC</u>, 268 F.3d 58, 63 (2d Cir. 2001); <u>Wm. Passalacqua Build-</u>

<u>ers, Inc. v. Resnick Developers S., Inc.</u>, <u>supra</u>, 933 F.2d at 139;

<u>Am. Protein Corp. v. AB Volvo</u>, <u>supra</u>, 844 F.2d at 60.

      New York courts consider the following factors in

deciding whether the requisite domination is present:

> (1) the absence of the formalities and paraphernalia
> that are part and parcel of the corporate existence,
> <u>i.e.</u>, issuance of stock, election of directors, keeping
> of corporate records and the like, (2) inadequate
> capitalization, (3) whether funds are put in and taken
> out of the corporation for personal rather than corpo-
> rate purposes, (4) overlap in ownership, officers,
> directors, and personnel, (5) common office space,
> address and telephone numbers of corporate entities,
> (6) the amount of business discretion displayed by the
> allegedly dominated corporation, (7) whether the re-
> lated corporations deal with the dominated corporation
> at arms length, (8) whether the corporations are
> treated as independent profit centers, (9) the payment
> or guarantee of debts of the dominated corporation by
> other corporations in the group, and (10) whether the
> corporation in question had property that was used by
> other of the corporations as if it were its own.

<u>JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade</u>

<u>Servs., Inc.</u>, <u>supra</u>, 306 F. Supp. 2d at 486, <u>quoting</u> <u>Wm.</u>

<u>Passalacqua Builders, Inc. v. Resnick Developers S., Inc.</u>, <u>supra</u>,

933 F.2d at 139; see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, supra, 268 F.3d at 63.

          In addition, a court will pierce the corporate veil only when a "fraud or wrong" has been committed.  See Am. Fuel Corp. v. Utah Energy Dev. Co., supra, 122 F.3d at 134 n.2, citing Morris v. N.Y.S. Dep't of Taxation & Fin., supra, 82 N.Y.2d at 141, 623 N.E.2d at 1160-61, 603 N.Y.S.2d at 810-11 ("[T]he New York Court of Appeals held that a conjunctive test was applicable and required a showing of both domination and fraud or wrong to justify the piercing of a corporate veil."); see also EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (Sweet, D.J.); Smoothline Ltd. v. N. Am. Foreign Trading Corp., 00 Civ. 2798 (DLC), 2002 WL 31885795 at *9 (S.D.N.Y. Dec. 27, 2002) (Cote, D.J.); Elgin Sweeper Co. v. Melson Inc., 884 F. Supp. 641, 652 (N.D.N.Y. 1995); Warner Bros. v. Gay Toys, Inc., 598 F. Supp. 424, 430 (S.D.N.Y. 1984) (Knapp, D.J.).  However, proof of the five elements of common law fraud is not required to satisfy the "fraud or wrong" requirement.  See Rotella v. Derner, 283 A.D.2d 1026, 1027, 723 N.Y.S.2d 801, 802 (4th Dep't 2001), quoting Lederer v. King, 214 A.D.2d 354, 354, 625 N.Y.S.2d 149, 150 (1st Dep't 1995) ("A plaintiff is 'not required to plead or prove actual fraud in order to pierce the corporate defendant's corporate veil, but [must prove] only that

                              19

the individual defendant's control of the corporate defendant was used to perpetrate a wrongful or unjust act toward plaintiff.'"); see generally JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., supra, 306 F. Supp. 2d at 486; Smoothline Ltd. v. N. Am. Foreign Trading Corp., supra, 2002 WL 31885795 at *11.

The pleading standard applicable to a veil piercing or alter ego claim has been described as a "knotty question." See Sofi Classic S.A. De C.V. v. Hurowitz, 444 F. Supp. 2d 231, 240 (S.D.N.Y. 2006) (inner quotations omitted) (Marrero, D.J.); see also Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc., 170 F.R.D. 361, 374 (S.D.N.Y. 1997) (Edelstein, D.J.). Courts have noted that veil-piercing claims are generally subject to Rule 8(a), unless the allegations pertain to fraud, in which case, those allegations are subject to the heightened pleading standard of Rule 9(b). See Marketplace LaGuardia Ltd., 07 Civ. 1003 (CBA), 2008 WL 905188 at *5 (E.D.N.Y. March 31, 2008) ("It is true that where alter ego liability is premised on allegations of fraud, the fraud must be pleaded with particularity. Where the claim is not premised on fraud, however, Fed. R. Civ. P. 9(b) does not apply."); EED Holdings v. Palmer Johnson Acquisition Corp., supra, 228 F.R.D. at 512, quoting In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y.

20

2003) (Pauley, D.J.) ("In this district, veil-piercing claims are generally subject to the pleading requirements imposed by Fed. R. Civ. P. 8(a) . . . . However, where a veil-piercing claim is based on allegations of fraud, 'the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined.'"); see also Sofi Classic S.A. De C.V. v. Hurowitz, supra, 444 F. Supp. 2d at 241; Network Enter., Inc. v. APBA Offshore Prod., Inc., 01 Civ. 11765 (CSH), 2002 WL 31050846 at *4-*5 (S.D.N.Y. Sept. 12, 2002) (Haight, D.J.); cf. Time Warner Cable v. Networks Grp., LLC, 09 Civ. 10059 (DLC), 2010 WL 356311 at *4 (S.D.N.Y. Sept. 9, 2010) (Cote, D.J.) ("Several district courts in this district have applied Rule 9(b) to claims to pierce the corporate veil that are based on a defendant's fraudulent conduct.  Until the Court of Appeals revisits its holding in [Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1351 (2d Cir. 1973)], however, Rule 8 is the appropriate standard . . . . ").[6]

---

[6]In Int'l Controls Corp. v. Vesco, 490 F.2d 1334 (2d Cir. 1973), the Second Circuit stated:

> Vesco & Co.'s reliance on the pleading requirements of Rule 9(b) of the Fed. R. Civ. P. is . . . misplaced.  Rule 9(b)'s requirement that 'averments of fraud . . . be stated with particularity' is inapplicable here since ICC did not proceed on the theory that Vesco & Co., itself, committed fraud, but rather that Vesco perpetrated the securities violations and then sought to shield his assets from the reach of his victim by transferring them to Vesco & Co.

(continued...)

21

Finally, "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter ego liability, even under the liberal notice pleading standard."  In re Currency Conversion Fee Antitrust Litig., supra 265 F. Supp. 2d at 426; see also Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007) (Karas, D.J.), citing Manos v. Geissler, 377 F. Supp. 2d 422, 425 (S.D.N.Y. 2005) (Conner, D.J.) ("[C]onclusory allegations of an alter ego are insufficient to survive a motion to dismiss.").  There must be "factual assertions" that support the plaintiff's allegations.  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).").

In its original Complaint, Key Items did not expressly allege an alter ego theory against Maierovitz or the Global Defendants, nor did the factual allegations in that Complaint support such a theory.  Specifically, in my Opinion and Order dated August 17, 2009, in which I dismissed the breach of con-tract and account stated claims against the Global Defendants, I found that Key Items failed to allege (1) domination and control of Ultima Diamonds by Maierovitz and the Global Defendants, and

---

[6](...continued)
490 F.2d 1334, 1351 n.23.

(2) that Maierovitz and the Global Defendants used the corporate form to perpetrate a fraud or other tort (Docket Item 26, at 21-22).  While the proposed Amended Complaint partially addresses these deficiencies, it continues to fall short of adequately pleading alter ego liability against any of the defendants.

With respect to the domination and control of Ultima Diamonds by Maierovitz, while the proposed Amended Complaint does not allege that Maierovitz owns Ultima Diamonds and/or the Global Defendants, New York courts recognize the doctrine of "equitable ownership" for veil-piercing purposes.  Under this doctrine, an individual who exercises sufficient control over a corporation may be deemed an "equitable owner," even if such individual is not actually a shareholder of the corporation.  See In re Vebeliunas, supra, 332 F.3d at 92, citing Freeman v. Complex Computing Co., Inc., supra, 119 F.3d at 1052; see also Mediators, Inc. v. Manney, 93 Civ. 2304 (CSH), 1996 WL 554576 at *5 (S.D.N.Y. Sept. 30, 1996) (Haight, D.J.); Guilder v. Corinth Constr. Corp., 235 A.D.2d 619, 619-20, 651 N.Y.S.2d 706, 707-08 (3rd Dep't 1997); Lally v. Catskill Airways, Inc., 198 A.D.2d 643, 644-45, 603 N.Y.S.2d 619, 621 (3rd Dep't 1993).  Specifi-cally, "a nonshareholder defendant may be, 'in reality,' the equitable owner of a corporation where [he] 'exercise[s] consid-erable authority over [the corporation] . . . to the point of

completely disregarding the corporate form and acting as though
[its] assets [are] his alone to manage and distribute.'"  Freeman
v. Complex Computing Co., Inc., supra 119 F.3d at 1051, quoting
Lally v. Catskill Airways, Inc., supra, 198 A.D.2d at 645, 603
N.Y.S.2d at 621.

   The proposed Amended Complaint fails to properly allege
facts supporting such a theory of equitable ownership.  Key Items
has only alleged that (1) Maierovitz is a director and an officer
at both Ultima Diamonds and the Global Defendants (Am. Compl.
¶ 6), (2) Maierovitz holds himself out as "V.P. Sales & Marketing
at Global Jewellery Solutions" (Am. Compl. ¶ 7); (3) the "Ultima
Group exists at the pleasure of Maierovitz [and] all three
companies are run in a fashion that cannot be distinguished from
the management of Maierovitz's personal affairs" (Am. Compl. ¶ 8)
and (4) Maierovitz was involved in the Key Items contract
throughout the parties' dispute (Am. Compl. ¶¶ 12-30).  Key Items
fails to offer any specific facts to support these conclusory
allegations.  See In re Currency Conversion Fee Antitrust Litig.,
supra, 265 F. Supp. 2d at 426 ("[P]urely conclusory allegations
cannot suffice to state a claim based on veil-piercing or al-
ter-ego liability, even under the liberal notice pleading stan-
dard."); Damianos Realty Grp., LLC v. Fracchia, 35 A.D.3d 344,
344-45, 825 N.Y.S.2d 274, 275-76 (2nd Dep't 2006) ("The mere

claim that the corporation was completely dominated by the defendants, or conclusory assertions that the corporation acted as their 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil.").  Key Items does not allege, for example, that Maierovitz disregarded corporate formalities to the point where he was commingling the assets or bank accounts of either Ultima Diamonds or the Global Defendants with his own -- i.e., treating the corporations as shells for his personal benefit.  In fact, it appears from the proposed Amended Complaint that Maierovitz, at most, acted only in a corporate capacity on behalf of Ultima Diamonds and the Global Defendants.

Thus, in light of Key Items' failure to allege facts showing domination and control of Ultima Diamonds by Maierovitz, its claim that the corporate veil should be pierced with respect to Maierovitz must be rejected.

With respect to the Global Defendants' putative domination and control of Ultima Diamonds, Key Items also does not allege that the Global Defendants own Ultima Diamonds.  However, Key Items does allege the following: (1) that the corporate defendants are controlled and dominated by Maierovitz (Am. Compl. ¶¶ 6, 8); (2) that Maierovitz and the Global Defendants "exercised complete domination and control" of Ultima Diamonds in

connection with Ultima Diamonds' contract with Key Items (Am.
Compl. ¶ 46); (3) that Maierovitz is a director, vice-president,
and secretary of the Global Defendants, as well as a director,
managing director, and president of Ultima Diamonds (Am. Compl. ¶
6); (4) that Maierovitz authorized the registration of the Global
Defendants (Am. Compl. ¶ 6); and (5) that Ultima Diamonds and the
Global Defendants are all Ontario corporations, share the same
address, and were involved in the transaction that is the subject
of the complaint (Am. Compl. ¶ 8).  Additionally, Key Items makes
allegations concerning eight of the ten factors listed in <u>Wm.
Passalacqua Builders, Inc. v. Resnick Developers S., Inc.</u>, <u>supra</u>,
933 F.2d at 139 -- namely, inadequate capitalization; overlap in
ownership, officers, directors and personnel; common office space
and business equipment; exercise of business discretion; arm's
length dealing; independent profit centers; guarantee of debts;
and the overlapping use of property (Am. Compl. ¶ 46(a)-(h)).

          While Key Items has properly alleged that (1) there is
an overlap in ownership, officers, directors, and personnel
between Ultima Diamonds and the Global Defendants (Am. Compl.
¶ 46(b)); and (2) the corporations share common office space and
contact information (Am. Compl. ¶ 46(c)), the rest of its allega-
tions concerning alter ego liability do not state a veil-piercing
claim that could withstand a motion to dismiss in light of all

26

the factors set forth in Wm. Passalacqua Builders, Inc. v.
Resnick Developers S., Inc., supra, 933 F.2d at 139.

   For example, in alleging that Ultima Diamonds was not
adequately capitalized by the Global Defendants, Key Items relies
only on (1) Maierovitz's May 26, 2009 statement that Ultima
Diamonds had been dissolved as of October 31, 2008 and its
business was being conducted under the Global Defendants' name
(Am. Compl. ¶ 46(a)), and (2) Maierovitz's October 19, 2009
affidavit stating that Ultima Diamonds has no assets (Am. Compl.
¶ 46(a)).  These allegations are insufficient because they are
vague and do not shed light on the time period relevant to the
veil-piercing claim at issue here, to wit, the date on which the
order to Key Items was placed and the time period up to October
31, 2008.  For example, Maierovitz states only that Ultima
Diamonds was dissolved as of October 31, 2008; he states nothing
about its financial condition on that date.  Further, whether
Ultima Diamonds had assets on October 19, 2009 -- approximately a
year after the transaction in issue and all subsequent events
alleged in the proposed Amended Complaint -- is of no consequence
to this inquiry.

   Additionally, in alleging that the Global Defendants
exercised business discretion over Ultima Diamonds (Am. Compl.
¶ 46(d)), that the corporations did not deal at arm's length (Am.

Compl. ¶ 46(e)), that the corporations were not independent profit centers (Am. Compl. ¶ 46(f)), and that there was an overlapping use of property (Am. Compl. ¶ 46(h)), Key Items relies only on the following: (1) that the Global Defendants returned some of the jewelry ordered by Ultima Diamonds; (2) Maierovitz's May 26, 2009 statement that Ultima Diamonds had been dissolved as of October 31, 2008 and its business was being conducted under the Global Defendants' name; and (3) that the primary business of the Global Defendants and Ultima Diamonds is the same, i.e., wholesalers in jewelry, watches, precious stones, and precious metals.  With respect to all four factors, these allegations are also insufficient because they address the time period after October 31, 2008 -- a period of time in which Ultima Diamonds was no longer even conducting business and the Global Defendants were acting solely in their own name in communicating with Key Items.  Thus, these factual allegations do not shed light on whether the Global Defendants dominated and controlled Ultima Diamonds prior to October 31, 2008.

Finally, in alleging that the Global Defendants guaranteed Ultima Defendants' contractual obligation to Key Items (Am. Compl. ¶ 46(g)), Key Items relies only on Maierovitz's March 2009 e-mail to Key Items, in which he stated:

> Thank you for your credit note . . . . Since there was
> a tremendous confusion with our largest customer as we

28

> were running two parallel companies, we lost our major
> cash flow . . . . However, it seems that all of this
> will be cleared within the next few weeks.  Yes, I gave
> you 23 Feb. as a payment date.  That was based on wrong
> information and I do apologize for that.

While this e-mail does bear the Global Defendants' name, Key
Items alleges no facts illuminating whether this statement, made
by Maierovitz who was also a director and officer of Ultima
Diamonds, was made on behalf of the Global Defendants in their
corporate capacity.  Moreover, even if the Global Defendants had
guaranteed the debt, this would not change the veil-piercing
analysis because Key Items has still failed to show the requisite
domination and control of Ultima Diamonds by the Global Defen-
dants with respect to the transaction in issue.

Thus, in light of Key Items' failure to allege facts
showing domination and control of Ultima Diamonds by the Global
Defendants, the proposed Amended Complaint also fails to state a
claim that the corporate veil should be pierced with respect to
Maierovitz and the Global Defendants.

IV.  Conclusion

Accordingly, for all the foregoing reasons, Key Items'
motion for leave to file an amended complaint is granted to the
extent that Key Items seeks to withdraw its claims for breach of

contract and an account stated against Maierovitz.   The motion is
denied in all other respects.


Dated:      New York, New York
            September 29, 2011


                              SO ORDERED


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Kathryn L. Bedke, Esq.
Paduano & Weintraub LLP
9th floor
1251 Avenue of the Americas
New York, New York 10020

Anthony Paduano, Esq.
Paduano & Weintraub
9th Floor
1251 Avenue of the Americas
New York, New York 10020

David M. Kasell, Esq.
Sadis & Goldberg
21st Floor
551 Fifth Avenue
New York, New York 10176

Douglas R. Hirsch, Esq.
Sadis & Goldberg
21st Floor
551 Fifth Avenue
New York, New York 10176

30

Francis D. Bigelow, II
Sadis & Goldberg
21st Floor
551 Fifth Avenue
New York, New York 10176